UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIRHAWK INTERNATIONAL, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>AIR SEAT INNOVATIONS LLC, et al.,<br><br>                              Defendants. | Case No.:  3:23-cv-1068-AGS-BLM<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS (ECF 8)** |

    Plaintiff alleges that defendants infringed on its registered trademarks and patents. Defendants' motion to dismiss those claims fails, except in two respects. First, the patent-infringement claim must be dismissed for improper venue. Second, the claims against the individual defendant owner go awry for lack of personal jurisdiction and failure to state a claim.

## BACKGROUND

    Plaintiff Airhawk International, LLC, is a California-based company that holds numerous patents and trademarks for its inflatable seat cushions. (ECF 1.) Airhawk alleges the defendants, Air Seat Innovations LLC and its owner James Smith III, adopted a similar trademark with the "intent to mislead and deceive consumers." (ECF 1, at 13.) Airhawk also contends that all defendants infringed or induced infringement on its various patents. (*Id.* at 13–15.) Defendants allegedly "import[ed], [sold], and/or offer[ed] to sell infringing products in" California's Southern "District." (*Id.* at 2.)

    Airhawk sued defendants for patent infringement, federal and common-law trademark infringement, and unfair competition under California law. (*See generally* ECF 1.) Defendants are Virginia residents and maintain that they only sold products "through e-commerce websites Amazon and Shopify." (ECF 8-1, at 12.) Via these platforms, "there were only 19 products that were shipped by [Air Seat] from Virginia to the State of California" "[o]ver the last 5 years." (*Id.*) Defendants move to dismiss for lack

of personal jurisdiction and improper venue. (*See* ECF 8-1, at 17–28.) Also, as to Smith alone, the defense seeks dismissal for failure to state a claim. (*See id*. at 29–32.)

## DISCUSSION

### A.   Venue

Looking first to venue, defendants protest that this is the wrong district for the patent-infringement claim. For that cause of action, venue is proper in the judicial district where either: (1) "the defendant resides" or (2) "the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Residence will not support venue here: Defendants reside in Virginia—not California—and plaintiff does not contend otherwise. (ECF 8-1, at 18–19; *see* ECF 9, at 11.) So, the venue decision turns on the "regular and established place of business" option.

At first blush, defendants do not seem to have the requisite business place in California. A qualifying "regular and established place of business" has three elements: (1) "a physical place in the district" that is (2) "a regular and established place of business" (3) "of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Defendants have "never leased" or "owned" any property in California, nor do they have any "employees in California." (ECF 8-1, at 18–19; ECF 8-2, at 3.)

Yet Airhawk argues that "Amazon fulfillment centers like those used by [d]efendants to store infringing products within a forum state" count under this definition. (ECF 9, at 15.) Not so. While third-party fulfillment centers may be "regular and established" business places that occupy a "physical place" in the district, they are not establishments "of the defendant." To be a business "of the defendant," the "defendant must establish or ratify the place of business." *In re Cray*, 871 F.3d at 1363. Courts consider "whether the defendant owns or leases the place," "exercises other attributes of possession or control over the place," or "represent[s] that it has a place of business in the district." *Id*. None of these considerations suggest that Amazon fulfillment centers are really Air Seat business places. There is no evidence, for example, to suggest that defendants maintain control of their products—nor the physical space within the California-based centers—

once the items are shipped to Amazon. Thus, these third-party fulfillment centers cannot satisfy the venue requirements for the patent-infringement claim. *See, e.g.*, *Reflection, LLC v. Spire Collective LLC*, No. 17cv1603-GPC(BGS), 2018 WL 310184, at *4 (S.D. Cal. Jan. 5, 2018) ("Since [defendant] has no control over its products once they are sent to Amazon [fulfillment centers], these storage centers cannot be said to be the 'place of Defendant.'"); *cf. Laltitude, LLC v. Dreambuilder Toy, LLC*, No. 2:21-cv-09324-JWH-JPRx, 2022 WL 2156110, at *2 (C.D. Cal. Apr. 6, 2022) (finding that the Amazon fulfillment center could not satisfy the "physical place in the district prong" because the defendant "ha[d] no right to control, inspect, or possess the space").

This Court is not the proper forum for a trial on infringement. So, that claim is dismissed without prejudice and without leave to amend. The next question is whether this Court has personal jurisdiction over defendants for the remaining claims.

**B.    Personal Jurisdiction**

"[P]laintiff bears the burden of establishing that jurisdiction is proper." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). For due-process purposes, there are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Airhawk cannot rely on general jurisdiction here. A court has general jurisdiction over an "individual's domicile" and over the "equivalent place" for a corporation—a state "in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). A corporation is at home in "its place of incorporation and principal place of business." *Ford Motor Co.*, 592 U.S. at 359. Smith is a Virginia resident, and Air Seat is a Virginia company with its principal place of business in Virginia.

(ECF 1, at 2; ECF 8-1, at 18–19.) Both defendants are "at home" in Virginia, not California. *See Ford Motor Co.*, 592 U.S. at 359.

Airhawk focuses instead on specific jurisdiction. (*See* ECF 9, at 11.) Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 592 U.S. at 359. For specific jurisdiction to exist "over a nonresident defendant," plaintiff must show that defendant (1) "purposefully direct[ed] his activities toward the forum," and (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). If those prerequisites are met, defendant may still defeat personal jurisdiction by establishing a "compelling case" that (3) the "exercise of jurisdiction" would not "comport with fair play and substantial justice," that is, it "would not be reasonable." *Id.* at 1068–69.

### 1. *Purposefully Directed*

For "purposeful direction," courts ask "whether the defendant: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). Defendants challenge only the second requirement: whether defendants "expressly aimed" their online sales towards California. "[O]peration of an interactive website does not, by itself, establish express aiming." *Herbal Brands*, 72 F.4th at 1091. "But operating a website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." *Id.* at 1092 (cleaned up).

Air Seat's 19 sales to California via Amazon and Shopify satisfy the purposeful-direction test. In *Herbal Brands*, the Ninth Circuit "addressed the question whether sales of a product to forum residents through an interactive website constitute 'something more' to establish express aiming when there is no evidence that the seller specifically targeted that forum." 72 F.4th at 1092–93. Much like here, the *Herbal Brands* plaintiff brought federal and state claims of "trademark infringement," "false advertising,"

and "tortious interference" against defendants because defendants sold plaintiff's products to the forum's residents through an Amazon storefront. *Id.* at 1089.

"[S]ales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided that two key elements are present." *Herbal Brands,* 72 F.4th at 1094. "First, the sales must occur as part of the defendant's regular course of business instead of being random, isolated, or fortuitous." *Id.* (cleaned up). "Second, the defendant must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." *Id.*

The first element—showing that the sales are part of defendants' regular course of business—is a "case-specific question that may turn on [several] factors." *Herbal Brands*, 72 F.4th at 1094. This Court need not explore "the precise contours" of that analysis, however, as defendants do not seriously contend that the California sales were outside the regular course of their business. *See id*. After all, "since its inception, [Air Seat] has only sold its products through Amazon and Shopify." (ECF 8-2, at 2 (Smith's declaration).) As part of that core business model—and much like the *Herbal Brands* defendant—Air Seat shipped and sold 19 products to California through Amazon and Shopify in the last five years. (*Id.*)

Of course, defendants note that the "19 products" represented "only approximately 0.175% of [Air Seat's] total sales." (ECF 8-1, at 12.) But that is irrelevant. The "number of sales made to customers in the forum" does not matter for this analysis. *Herbal Brands*, 72 F.4th at 1095, 1097. If anything, these California transactions over multiple years show that the online sales were not "truly isolated" and thus were in the "regular course of business." *See Herbal Brands*, 72 F.4th at 1094–95.

Turning to the second element—whether defendant had some control over the product's ultimate distribution—*Herbal Brands* again guides the way. The *Herbal Brands* defendant exercised the requisite level of control over distribution by "choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and

delivers products to all fifty states." 72 F.4th at 1094–95. Similarly, the defense here "only sold its products through e-commerce websites Amazon and Shopify," knowing those products could be—and were—shipped and sold to residents in California. (ECF 8-1, at 19.) So, the elements of "expressly aimed" conduct are met, and defendants thus purposefully directed their activities toward California.

### 2. *Arises Out of or Relates to Defendant's Contacts*

"The second prong of the specific jurisdiction inquiry requires that a plaintiff's claims arise out of or relate to the defendant's contacts with the forum." *Herbal Brands*, 72 F.4th at 1096 (cleaned up). "'[A]rise out of' and 'relate to' are alternatives: for a claim to arise out of defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation[.]" *Yamashita v. LG Chem., Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023) (citing *Ford Motor Co.*, 592 U.S. at 363). As in *Herbal Brands*, "Plaintiff's claims—which allege harm caused by Defendants' sales of products—clearly arise out of and relate to Defendants' conduct of selling those same products to [the forum's] residents" through online storefronts. 72 F.4th at 1096; *see id.* at 1089, 1097 (holding that district court had personal jurisdiction over defendants for claims of trademark infringement, unfair competition, false advertising, and tortious interference).

### 3. *Reasonableness: Fair Play and Substantial Justice*

Because plaintiff satisfies the first two prongs, "the burden then shifts to the defendant[s] to present a compelling case that the exercise of jurisdiction would not be reasonable." *Herbal Brands*, 72 F.4th at 1096. Reasonableness is determined by a seven-factor balancing test:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 609 (9th Cir. 2018).

Defendants rely on only the first two factors to assert that personal jurisdiction is unreasonable. (*See* ECF 8-1, at 15–16.) As to the first, they correctly note the limited "purposeful injection" into California: they've shipped items there only 19 times in the last five years, making up only "0.175%" of Air Seat's total sales. This factor weighs against exercising jurisdiction. But given that Air Seat has taken advantage of California's forum, on average, about four times a year for the last five years, it does so only slightly. *Cf. Herbal Brands*, 72 F.4th at 1097 (noting that exercising personal jurisdiction from Arizona "would not be reasonable" against "a Maine resident [who] ran a small business selling New England-themed keychains" and who sold only one keychain "to an Arizona resident").

As for the second factor, defendants state that it would be "burdensome" to litigate in this district because defendants have never visited California nor have "any physical presence" or "connection to California." (ECF 8-1, at 25.) Although "[w]ith the advances in transportation and telecommunications," "any burden of litigation in a forum other than one's residence is substantially less than in days past," this factor also weighs against exercising jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (cleaned up).

Yet the remaining factors—which defendants bypass—"either favor California as a forum, or at the very least do not present a 'compelling case' against it." *See Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1099 (9th Cir. 2023). For example, the complaint alleges violations of federal law and California state law, thus favoring plaintiff's choice of forum. (*See generally* ECF 1.) And "California likely has a strong[] interest in this dispute" because plaintiff's principal place of business is in California, as were at least 19 customers who may have been misled. *See Impossible Foods*, 80 F.4th at 1099–1100.

Even though some factors tip their way, on balance, defendants have not made a "compelling case" that exercising personal jurisdiction would be unreasonable.

### 4. *Personal Jurisdiction over Smith*

Defendants further argue that the "alleged acts involving Smith, in his official capacity for [Air Seat], cannot be attributed to him as individual acts creating personal jurisdiction." (ECF 8-1, at 26.) But "[a] corporate officer's contacts on behalf of a corporation [can be] sufficient to subject the officer to personal jurisdiction where the officer is a primary participant in the alleged wrongdoing or had control of, and direct participation in[,] the alleged activities." *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 996 (E.D. Cal. 2012) (cleaned up). This is so when "defendant was the 'guiding spirit' behind the wrongful conduct" or a "'central figure' in the challenged corporate activity." *Id.* at 997. Yet as discussed below, plaintiff's complaint insufficiently pleads this theory. And, more to the point here, there is no additional evidence beyond the complaint's allegations to suggest personal jurisdiction over Smith is appropriate as the "guiding spirit" behind Air Seat's actions. (*See generally* ECF 9-1 (failing even to mention Smith in sole declaration supporting personal jurisdiction).)

But since it's possible the deficiencies could be cured, the Court grants leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### C. Failure to State a Claim Against Smith

Finally, the defense argues that the complaint fails to state a claim against Air Seat's owner Smith, because Smith was not "personally involved in the alleged wrongdoings" and there is no basis to "pierce the corporate veil." (ECF 8-1, at 29.) In particular, the defense objects that the complaint unfairly "lumps . . . together" Smith and his company in "fact-barren" and "conclusory" "collective factual allegations." (*Id.* at 32.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quotation marks omitted). Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

8

misconduct alleged." *Id.* For claims of trademark infringement and unfair competition against corporate officers, plaintiffs need not "pierce[] the corporate veil," but must offer "sufficient facts to support [i]ndividual [d]efendants' personal involvement in the alleged infringement without relying solely on their [corporate] roles." *Global Apogee v. Sugarfina, Inc.*, No. CV 18-5162-RSWL-EX, 2021 WL 4819715, at *5 (C.D. Cal. Oct. 15, 2021); *see also POM Wonderful LLC v. Purely Juice, Inc.*, 362 F. App'x 577, 581 (9th Cir. 2009) (A corporate officer "is liable under §§ 17200 and 17500 of the California Business and Professions Code if he personally caused, or, being in control, at least permitted the [tortious] acts.").

According to the complaint, Smith is the "equitable owner" of Air Seat. (ECF 1, at 2; *see also* ECF 8-2, at 2.) Otherwise, Smith, Air Seat, and ten other unknown defendants are lumped in as an undifferentiated mass, and "each of them" are alleged to have engaged in all the various tortious conduct. (*See, e.g.*, ECF 1, at 13.) This doesn't plausibly suggest that Smith caused, controlled, directed, permitted, or committed the acts. *See BioZone Labs. Inc. v. Next Step Labs. Corp.*, No. 17-CV-02768-NC, 2017 WL 5665658, at *4 (N.D. Cal. Nov. 27, 2017) (finding no liability when, like here, "the complaint more superficially asserts that 'Defendants' violated the QuSomes and Inflacin marks and advertised illegally"); *see also Andes Indus., Inc. v. Cheng Sun Lan*, 774 F. App'x 358, 360 (9th Cir. 2019) (noting that even a "general allegation that the defendant 'directed' the other defendants to take wrongful actions was insufficient to defeat a motion to dismiss"). As the equitable owner, it's unclear if Smith has the authority to manage Air Seat's day-to-day activities. Even if he does, "[m]ere authority to direct the infringing behavior is not enough; personal involvement is necessary." *Biozone*, 2017 WL 5665658, at *4.

Finally, those same allegations of control are far too thin to plausibly support Airhawk's alter-ego theory. "To state a claim of alter ego liability under California law, a plaintiff must allege (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts

are treated as those of the corporation alone, an inequitable result will follow." *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017) (cleaned up).

So, the claims against Smith are dismissed with leave to amend.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED IN PART**. For lack of venue, the patent-infringement claim is **DISMISSED** without prejudice and without leave to amend. The claims against Smith are **DISMISSED** for lack of personal jurisdiction and failure to state a claim, but with leave to amend. By October 4, 2024, Air Hawk must file any amended complaint. The motion is otherwise denied.

Dated: September 4, 2024

_____
Hon. Andrew G. Schopler
United States District Judge